UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ROBERT POINDEXTER,

        Plaintiff,

    -v-                          No.   06 Civ. 3403 (LTS) (DCF)

WARNER/CHAPPELL MUSIC INC.,

        Defendant.

--------------------------------------------------------x


### MEMORANDUM OPINION AND ORDER

      Pro se Plaintiff Robert Poindexter ("Poindexter" or "Plaintiff") brings this copyright ownership and infringement action against Defendant Warner/Chappell Music Inc. ("Warner/Chappell" or "Defendant"), seeking damages and an injunction preventing Defendant from using and distributing certain songs.  Defendant filed a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss for failure to state a claim upon which relief could be granted.  Because both parties referenced and submitted materials beyond the scope of the complaint, the Court issued an order converting the 12(b)(6) motion to one for summary judgment under Rule 56 pursuant to Rule 12(d) (Docket Entry No. 18), after which additional submissions were made.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1338 and 28 U.S.C. § 1331.

      The Court has reviewed thoroughly the parties' submissions.  For the reasons explained below, Defendant's motion for summary judgment is granted in its entirety.

## BACKGROUND

Although neither party has submitted a Statement pursuant to S.D.N.Y. Local

Civil Rule 56.1, the Court has examined carefully both parties' evidentiary proffers in

determining whether there are any genuine issues of material fact. The following facts are

undisputed unless otherwise noted.

Poindexter, with his wife Jacqueline Poindexter and his brother Richard

Poindexter (collectively "the Poindexters"), co-wrote a number of songs, including "It's a Thin

Line Between Love and Hate" ("Thin Line"), all of which were popularized by the soul vocal

group The Persuaders and form the basis of this copyright action (hereinafter referred to as "the

songs").[1]  The Poindexters' copyright in "Thin Line" was registered in 1971. (Robert A. Jacobs

---

[1]     In his complaint, Poindexter cited "Thin Line" and 23 other songs, which he did
not name, as the subject matter of this action. (Compl. at ¶ 4.) Poindexter's
opposition papers, however, list specific titles as comprising the unidentified
songs listed in his Complaint, acknowledging that the number of titles listed is
less than the 23 titles the Complaint had referenced. The song titles listed in
Plaintiff's opposition papers are: "Thin Line," "Love Gonna Pack Up and Walk
Out," "Peace in the Valley of Love," "Bad Bold and Beautiful Girl," "Is It To[o]
Heavy For You," "My Love Goes Good When Things Go Bad," "If You Fell [sic]
Like I Do," "Trying Girls Out," "If You Feel Like I Do," "My Love Goes Good
When Things Go Bad," "Mr. Sunshine," "Thanks For Loving Me," "Blood
Brothers," "Thigh Spy," "Can't Go No Further and Do No Better," "I Still Love
You," "Thanks For Loving Me," "If This Is What You Call Love," "You Must
Have Put Something in Your Love." (Pl.'s Opp'n Bkgd. ¶ 2.) (Three of the titles
("If you Feel Like I Do," "My Love Goes Good When Things Go Bad," and
"Thanks For Loving Me") are listed twice.)

Plaintiff's exhibits, which are discussed infra, consist of letters and draft contracts
which refer repeatedly to the aforementioned titles (or slight variations thereof).
They also reference songs that were performed by The Persuaders, without
specifying the precise titles. The Court takes judicial notice of the fact that the
aforementioned titles appeared on The Persuaders' first two albums published in
the 1970's, "Thin Line Between Love and Hate" and "The Persuaders."
Therefore, the Court construes the references to songs performed by The
Persuaders which appear in Plaintiff's exhibits as referencing the songs which are
the subject of Plaintiff's action.

Decl. dated Oct. 6, 2006 ("Jacobs Decl. 10/06") Ex. 2.)  In that same year, a contract ("the 1971

Contract") was executed which, according to Defendant, transferred a half ownership interest

and full rights of administration in the copyrights to the songs from the Poindexters to Cotillion

Music, Inc. ("Cotillion"), a publishing arm of Atlantic Recording Corporation ("Atlantic"),

predecessor-in-interest to, and current subsidiary of, Warner/Chappell.  (Poindexter Decl. dated

July 10, 2008 ("Poindexter Decl. 7/08") Ex. B; Compl. ¶ 4.)  The actual signatories to the 1971

Contract were Atlantic and a corporation called Win or Lose Productions, Inc. ("Win or Lose"),

but it is unclear who signed the contract on behalf of Win or Lose.  In 1972, Poindexter and

others executed a second contract with Atlantic on behalf of Win or Lose ("the 1972 Contract").

(Id.)  Poindexter argues that neither Win or Lose nor the signatory to the 1971 Contract had the

right to transfer the copyrights on his behalf, that he executed the 1972 Contract in order to

cancel the one-half copyright transfer purportedly effectuated by the 1971 Contract, and that the

1972 Contract in fact cancelled the transfer.  (See 1972 Contract, appended to Poindexter Decl.

7/08 at Ex. B ¶ 1 ("The Agreement [the 1971 Contract] is hereby terminated . . . ").)  Defendant

argues that the 1972 Contract ratified, rather than terminated, the copyright transfer terms of the

1971 Contract.  (See 1972 Contract ¶ 5 ("In all other respects the Agreement [the 1971 Contract]

is hereby ratified and confirmed.").)

          On June 16, 1988, Poindexter, through a retained lawyer, wrote to Atlantic

indicating that, on the basis of numerous royalty statements rendered by Atlantic to Poindexter

over an unspecified period of time, Atlantic had been "consistently claim[ing]" a publishing

interest in the songs, and that this claimed interest was invalid.  The letter further indicated that

Poindexter had been having "numerous discussions and several meetings" with Atlantic staff in

an effort to resolve the dispute.  (Poindexter Decl. dated Nov. 9, 2006 ("Poindexter Decl. 11/06")

Ex. C.)  Atlantic responded on June 29, 1988, disputing Poindexter's assertion that Atlantic had no right to publish the songs and cited the 1971 and 1972 Contracts.  (Id.)  On January 18, 1990, Atlantic proposed a settlement agreement to Poindexter, offering an unspecified amount of retroactive royalty payments but refusing to make any written assurance as to any further exploitation of the songs.  (Id. Ex. L.)  It is not clear whether this agreement was eventually signed.

On June 17, 1991, Poindexter sued Atlantic by filing a Summons with Notice with the Supreme Court of the State of New York, County of New York.  The Summons with Notice was served upon Atlantic (Decl. of Robert A. Jacobs dated Dec. 14, 2006 ("Jacbos Decl. 12/06"), Ex. 1 (docket sheet)),[2] and Atlantic subsequently entered a Notice of Appearance.  (Poindexter Decl. 11/06 Exs. A-B.)  The Summons described the "nature of [the] action" as the "illegal use of property and theft of royalty" and demanded a sum of money with interest from 1971 to 1991.  The words "SUMMONS FILED TO TOLL THE STATUTE PURSUANT TO CPLR SEC 203(b)5" are stamped on the Summons.[3]  (Id. Ex. A.)  Although Atlantic did not

---

[2]     The docket sheet includes a stamp that reads, "SUMMONS COMPLAINT AFFT. OF SERVICE" and appears to correspond with a date stamp of June 17, 1991, but apart from this stamp there is no evidence that an actual complaint was filed.  In any case, whether a complaint was filed along with the summons in the state court action is not material to this decision.

[3]     N.Y. C.P.L.R. § 203 provides now, as it did in 1991, in relevant part:

> (a) Accrual of cause of action and interposition of claim.  The time within which an action must be commenced, except as otherwise expressly prescribed, shall be computed from the time the cause of action accrued to the time the claim is interposed.

> (b) Claim in complaint where action commenced by service.  In an action which is commenced by service, a claim asserted in the complaint is interposed against the defendant . . . when: . . .

answer or otherwise respond in that lawsuit, Plaintiff proffers no evidence of any further activity

in that lawsuit, no judgment was ever entered in that case, and the last entry of the docket was

dated September 26, 1991.[4]  (Jacobs Decl. 12/06 Ex. 1.)

On February 18, 1998, Atlantic sent the Poindexters a letter-contract wherein

Atlantic noted, "You have asserted a claim against us for compensation in respect of our

exploitation of the Masters, which claim has been the subject of a good faith legitimate dispute."

The "Masters" were defined by reference to Exhibit A of that letter, which included the songs

specifically identified by Poindexter as the basis of the instant action.[5]  (Poindexter Decl. 11/06

Ex. M.)  On December 4, 1998, Warner/Chappell wrote to Poindexter asserting that

Warner/Chappell, as successor-in-interest of Cotillion, was entitled to one-half ownership

interest in and exclusive administration rights to "Thin Line."  In addition, Warner/Chappell

wrote, "Unless you can provide us with any information or documentation to the contrary within

thirty (30) days, we shall adhere to update our system to reflect Cotillion Music c/o Warner

---

> 5. the summons is delivered to the sheriff of [the] county . . . in which the defendant . . . may be served or in which the cause of action arose, provided that: (i) the summons is served upon the defendant within sixty days after the period of limitation would have expired but for this provision; or [other conditions of service upon defendant within sixty days after the period of limitation would have expired].

N.Y. C.P.L.R. § 203 (West 2003).

[4]     Defendant proffered the docket sheet and Plaintiff does not dispute its authenticity.

The words "AFF'TS. ORDER (SHOW CAUSE)" and "AFFT. OF SERVICE" are stamped next to the September 26, 1991, date entry, and the words, "Order Vacating Default, etc." are handwritten underneath.

[5]     The letter-contract was executed by the Poindexters.  The meaning of the contract itself is not material for purposes of this opinion.

Chappell Music, Inc. as the exclusive administrator of the above-referenced composition [that is, "Thin Line"]."  (Poindexter Decl. 11/06 Ex. G.)  On January 13, 1999, BMI sent a letter to Warner/Chappell, copied to Poindexter, with the "Thin Line" title as the subject matter of the letter, indicating that Poindexter was "currently attempting to resolve this matter directly with you" and that BMI would "continue to pay each of you 50% of the publishing royalties until this matter is resolved."  (Id.)

On January 21, 1999, the Poindexters renewed their copyright registration in "Thin Line."  (Poindexter Decl. 7/08 Ex. A.)  Poindexter continued collecting royalties, including royalties designated as "Co-publ[isher] Royalties" (according to a royalty statement schedule proffered by Plaintiff), from Warner/Chappell from 1999 to 2003.  (Poindexter Decl. 7/08 Ex. A.)

On December 22, 2004, the Poindexters and Warner/Chappell entered into an agreement to toll the statute of limitations on the Poindexters' copyright claim to "Thin Line." (Poindexter Decl. 11/06 Ex. N.)

On May 3, 2006, Poindexter filed the instant action for copyright infringement, based on his alleged full ownership of the songs and his registration renewal of "Thin Line" in 1999, alleging that Warner/Chappell has never had any ownership interest in the copyrights of the songs, and seeking damages for infringement of the copyrights and an injunction against continued distribution of the songs.  Defendant asserted, first under Rule 12(b)(6) and now under Rule 56(c), that the 1971 and 1972 Contracts unambiguously granted it a half ownership of the copyrights, and that Poindexter's claim is barred because the Copyright Act's three-year statute of limitations has expired.

DISCUSSION

Summary judgment shall be granted in favor of a moving party where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration in original)).   "[M]ere conclusory allegations, speculation or conjecture" will not provide a sufficient basis for a non-moving party to resist summary judgment.  Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).  The evidence is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in its favor.  Rubens v. Mason, 527 F.3d 252 (2d Cir. 2008).

Claims under the Copyright Act are subject to a three-year statute of limitations. See 17 U.S.C. § 507(b).  A claim for copyright ownership accrues when the plaintiff "knows or has reason to know of the injury" upon which the claim is premised.  Merchant v. Levy, 92 F.3d 51, 56 (2d Cir. 1996); see also Dewan v. Blue Man Group L.P., 73 F.Supp.2d 382, 386–387 (S.D.N.Y. 1999) (accrual when plaintiff knew of defendant's failure to follow through on promises to credit plaintiff as a co-author).

This statute of limitations period may be extended under the doctrine of equitable tolling, which the Court has discretion to apply when the plaintiff was "justifiably ignorant of his cause of action." Carell v. Shubert Organization, Inc., 104 F. Supp. 2d 236, 250 (S.D.N.Y. 2000) (citation omitted).  The Court must consider "whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period []he seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003) (citations and quotations omitted).  Under the related doctrine of equitable estoppel, the statute of limitations may be tolled in extraordinary circumstances where the plaintiff knew of the existence of his cause of action, but the defendant's misconduct caused him to delay bringing suit. Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997) (citing Levy v. Aaron Faber, Inc., 148 F.R.D. 114, 119 (S.D.N.Y. 1993); Buttry v. General Signal Corp., 68 F.3d 1488, 1493 (2d Cir. 1995)).  "Equitable estoppel is applicable only in situations where demonstrated 'egregious wrongdoing' by a defendant prevents a plaintiff from bringing suit on a claim of which the plaintiff is aware." Netzer v. Continuity Graphic Assocs., Inc., 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997).  Under either doctrine, the plaintiff bears the burden of demonstrating that his ignorance is not attributable to a lack of diligence on his part during the period which the plaintiff seeks to equitably toll. Id. (citation omitted); United States v. All Funds Distributed To, 345 F.3d 49, 55 (2d Cir. 2003) ("A party seeking to benefit from the doctrine bears the burden of proving that tolling is appropriate").

Plaintiff's infringement and ownership claims premised on his alleged full copyright ownership of the songs is barred by the statute of limitations.  Plaintiff had been having "numerous discussions and several meetings" with representatives of Atlantic,

Warner/Chappell's predecessor-in-interest, as early as 1988 and knew that Atlantic was claiming a right to publish the songs at that time.  (Poindexter Decl. 11/06 Ex. C.)[6]  Therefore, the three-year statute of limitations expired at latest in 1991 and, as the instant action was filed in 2006, Plaintiff's claims must be dismissed for untimeliness.

Plaintiff argues that the Court should toll the statute of limitations under the doctrines of equitable tolling or equitable estoppel.  The parties agreed in 2004 to toll the statute of limitations from that point forward, but the agreement did not apply to any of the preceding years, nor did it in any way revive the long-expired statute of limitations term.[7]  Therefore, the Court must consider whether there is any other basis for tolling the limitations period from 1991, when the limitations period expired.

Plaintiff proffers no evidence from which it can be reasonably inferred that he was justifiably ignorant of his ability to bring the instant suit from 1991 until the 2004 tolling agreement, that Warner/Chappell or Atlantic committed any egregious wrongdoing whatsoever that caused Plaintiff's extensive delay, or that Plaintiff pursued his claims continuously after 1991 with reasonable diligence.  There is no evidence of any activity in connection with his 1991 lawsuit after three months had passed since his filing of the Summons, and there is no evidence that Plaintiff was unable to (or even tried to) secure counsel, as he had done in 1988, in order to

---

[6]     Indeed, as Defendant correctly points out, Plaintiff acknowledges repeatedly in his opposition papers that he knew of his claims not only in 1988, but as early as 1971.  (See, e.g., Opp'n at 8 ("[Defendant states] that I was aware of the copyright injury since 1971.  I have repeatedly acknowledge[d] such in the complaint and many times herein above.").)

[7]     The agreement also applied only to Plaintiff's claims of full ownership to "Thin Line," and not any of the other songs involved in this action.  Plaintiff's claims of ownership as to the other songs would nonetheless still fail even if the tolling agreement applied to the other songs, for the reasons explained infra.

prosecute that suit.  The procedural rule referenced by the court stamp on the Summons does

essentially permit an extension of the statute of limitations, but no more than 60 days.  See N.Y.

C.P.L.R. § 203.[8]  Nothing in the record suggests that Plaintiff would have been reasonable in

believing that the mere filing of suit, without more, could toll the statute of limitations

indefinitely.

Plaintiff asserts that settlement discussions took place throughout this time period,

but settlement discussions are not the sort of extraordinary circumstance that justify Plaintiff's

failure to bring the instant action in a timely manner or to continue prosecuting the 1991 lawsuit,

absent evidence of any misrepresentations from the relevant entities or any other type of

egregious misconduct at any time during the relevant period.  See Pfister v. Allied Corp., 539 F.

Supp. 224, 227 (S.D.N.Y. 1982) ("There is no allegation that the defendant acted in bad faith or

deceitfully lured the plaintiff into settlement discussions, or that it attempted in any way to cause

the plaintiff to miss the appropriate filing date.").

There is no evidence that Atlantic or Warner/Chappell ever led Plaintiff to believe

that they were acquiescing to his assertion of full ownership, that they would increase their

royalty payments to reflect a greater-than-one-half ownership share by Plaintiff, or that they

would not raise a statute of limitations defense, such that Plaintiff would be acting reasonably in

failing to prosecute his 1991 lawsuit.  See, e.g., Heins v. Potter, 271 F. Supp. 2d 545, 552

---

[8]     Plaintiff cites N.Y. C.P.L.R. § 306-b, but also to no avail.  Rule 306-b was not
enacted until 1992, and in any case the rule merely provided a 120-day grace
period after the filing of a summons with notice during which plaintiff was
required to serve the defendant.  See Leader v. Maroney, Ponzini & Spencer, 97
N.Y.2d 95, 99 (N.Y. 2001).  It is undisputed that Atlantic was served with the
Summons with Notice soon after it was filed by Plaintiff, but there is no evidence
of any prosecutorial activity after three months had passed since the filing of the
lawsuit, and nothing in the rule or in the record warrants an indefinite tolling of
the statute of limitations based solely on the initiation of the 1991 lawsuit.

(S.D.N.Y. 2003) ("Equitable estoppel bars a defendant from relying on a statute of limitations as a defense where 'the defendant takes active steps to prevent plaintiff from suing in time, as by promising not to plead the statute of limitations'") (citation omitted); Netzer, 963 F. Supp. at 1316 ("Ordinarily the doctrine applies where . . . [plaintiff's] delay is excused because either the defendant misrepresented the length of the limitations period or 'lulled the plaintiff into believing it was not necessary to commence the litigation'") (quoting Cerbone v. ILGWU, 768 F.2d 45, 50 (2d Cir. 1985)).  To the contrary, Plaintiff was informed repeatedly by Atlantic and Warner/Chappell throughout this time period and in unequivocal terms that they were asserting a one-half ownership in the songs.  Moreover, the record reveals significant gaps in time, namely, the 1993 to 1998 and 2000 to 2003 time periods, for which there is no evidence of any ongoing settlement discussions that would justify tolling the statute of limitations for those periods even if the settlement discussions themselves reflected reasonable diligence, which they do not. Plaintiff's reliance on the 1971 and 1972 Contracts is misplaced, as there is nothing in those Contracts that would suggest an agreement to toll the statute of limitations or any other equivalent agreement permitting Plaintiff to sue Atlantic for ownership or infringement at any time regardless of the amount of time that had passed.

In sum, there is no evidence of any extraordinary circumstances that would justify, on an equitable tolling or equitable estoppel basis, the tolling of the statute of limitations for the entirety of the period of time between 1991 and 2004.  Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's claims concerning the initial copyright terms of the songs.

Plaintiff's infringement and ownership claim concerning "Thin Line," as premised on the renewed copyright registration in January 1999, see 17 U.S.C. § 304(c), is also

barred by the statute of limitations.  It is undisputed that, about one month prior to his renewal, Plaintiff had received a letter in which Defendant unequivocally asserted its one-half ownership interest and exclusive publishing interest in "Thin Line" and that it would continue to do so, and that, about one week prior to his renewal, Plaintiff was reminded that he would continue to receive one-half of publishing royalties until the matter was resolved.  It is further undisputed that Plaintiff continued receiving royalty payments, including "Co-publ[ishing] Royalties," from 1999 to 2003.[9]  In light of Defendant's continued insistence of its one-half ownership right just prior to the renewal, the absence of any indication by Defendant that its belief would change, Plaintiff's continued receipt of co-publishing royalties in 1999 and the absence of any evidence that Defendant was made aware of Plaintiff's registration renewal, any rational fact-finder would conclude that Plaintiff was well aware that Defendant was continuing to assert a one-half ownership interest in "Thin Line" notwithstanding Plaintiff's copyright renewal in January 1999. The statute of limitations with respect to his ownership claim to "Thin Line" premised on the 1999 renewal therefore expired by 2002, well before the tolling agreement was executed in December 2004.

There is also no evidence or any assertion that Plaintiff justifiably believed that his registration renewal in January 1999 caused Atlantic or Warner/Chappell to relinquish their asserted one-half ownership in "Thin Line," there is no evidence that Plaintiff sought to bring suit on the basis of the renewal at any time prior to 2004, and Plaintiff has otherwise proffered

---

[9]     No rational fact-finder reviewing the royalty payment schedule proffered by Plaintiff and its reference to "Co-publ Royalties" would conclude that such royalties did not reflect Defendant's asserted one-half entitlement to the publishing proceeds, nor does Plaintiff proffer any evidence that the royalties paid from 1999 to 2003 reflected any kind of belief by Defendant that Plaintiff was entitled to full ownership rights to "Thin Line."

no evidence whatsoever of any extraordinary circumstances that would justify tolling the statute

of limitations for any period of time after the renewal claim expired in 2002, under either the

doctrine of equitable tolling or equitable estoppel. Therefore, Defendant's motion for summary

judgment is granted as to Plaintiff's claims to the extent they are premised on the registration

renewal of "Thin Line" in January 1999.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted

in its entirety. The Clerk of Court is respectfully requested to terminate Docket Entry No. 6,

enter judgment in Defendant's favor, and close this case.

SO ORDERED.

Dated:       New York, New York
             February 9, 2009

LAURA TAYLOR SWAIN
United States District Judge